Edward JOSEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–01332–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 22, 1998.

Stanley G. Schneider, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

Before FOWLER, LEE, and AMIDEI, JJ.

## OPINION

FOWLER, Justice.

Appellant, Edward Josey, entered a plea of guilty to the offense of possession of a controlled substance, ie., cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (Vernon Supp.1998). In accordance with an agreed punishment recommendation, the trial court assessed a $2,500 fine and seven years confinement in the Institutional Divi-

sion of the Texas Department of Criminal Justice but it probated the sentence. In ten points of error, appellant claims the trial court improperly denied his motion to suppress. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

While on patrol, two officers of the Houston Police Department's Southeast Gang Task Force observed two vehicles parked in the middle of the street. The driver of one vehicle was standing in the street talking to the occupants of the other car. The officers pulled up behind one of the cars and turned on their overhead lights. When the driver of the second car started to drive away, one officer ordered the driver to stop and return to the scene. Because the traffic stop involved two cars and four people, the officers called for backup assistance.

Officer Douglas Griffith approached one car and asked the driver, Geron Randall, for his driver's license and proof of insurance. Randall had neither, therefore, Griffith placed him under arrest for traffic violations. Griffith asked appellant, who was sitting in the passenger seat of the vehicle, for identification. Appellant gave him a Texas identification card, but not a driver's license. Griffith ran a computer check on appellant and discovered appellant had a valid Texas driver's license. In the meantime, Griffith's partner called a wrecker to impound the vehicle. Impoundment was necessary because the driver was under arrest. Officers could not release the vehicle to appellant because appellant did not have his driver's license with him.

Before giving the keys to the wrecker driver, Griffith and a backup officer conducted an inventory search of the vehicle. During the search, Griffith found a large plastic bag containing $7,000 in cash in the car's trunk. The money had been separated in $1,000 bundles, and each bundle was folded over and secured with a rubber band. Because, in Griffith's experience, money used in narcotics transaction is often bundled this way, Griffith suspected narcotics might be present in the vehicle. Griffith placed appellant in custody while he tried to determine who owned the car. He asked appellant to get out of the car, and patted him down. In the meantime, a crowd of five to ten people gathered at the corner of a nearby intersection. Concerned about the officers' safety and maintaining the status quo, Griffith handcuffed appellant and placed him on the other side of the patrol car.

Griffith then continued to search the vehicle. In the passenger-side glove compartment, Griffith found the title to the automobile, which named appellant as the owner. After appellant confirmed his ownership of the car, the officers contacted the narcotics division to determine what to do next. On the advice of the narcotics dog handler, one of the officers drove appellant's vehicle to the Southeast Command Station, and the other officers transported appellant and the other men to the station.

Once at the station, the narcotics dog alerted officers to the odor of drugs on the money. The dog also alerted officers to the odor of drugs in the center of the dashboard of appellant's car. Suspecting the presence of narcotics inside the radio compartment, the officers removed the radio and found a loaded .40 caliber Glock pistol and a small amount of cocaine and marijuana. Appellant admitted to Griffith that he owned the gun.

Appellant was arrested and indicted for possession of cocaine. Before trial, appellant filed a motion to suppress evidence obtained during the search of his vehicle. After hearing evidence and reading the parties' memoranda of law, the trial court denied appellant's motion to suppress. The trial court then accepted appellant's plea of guilty and assessed punishment, and appellant perfected this appeal.

## II. ILLEGAL STOP AND ARREST

In his first four points of error, appellant argues the trial court improperly denied his motion to suppress because his detention and arrest violate the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Texas Constitution. Specifically, appellant contends the officers did not have a reasonable articulable suspicion or probable cause to

stop his car and did not have probable cause to arrest him for any violation of the law.

■ Historically, a trial court's decision on a motion to suppress has been reviewed under an abuse of discretion standard. *See Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). As a general rule, an appellate court should give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). An appellate court should also give the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* An appellate court may review de novo "mixed questions of law and fact" not falling within this category. *See id.* If the trial court does not file findings of fact and conclusions of law, an appellate court presumes the trial court made findings necessary to support its ruling so long as those implied findings are supported by the record. *See State v. Simmang*, 945 S.W.2d 219, 221–22 (Tex.App.—San Antonio 1997, no pet.).

## A. REASONABLENESS OF INITIAL STOP

In his first and second points of error, appellant contends the State violated his rights under the state and federal constitutions because the officers had neither reasonable suspicion nor probable cause to believe he had committed a traffic offense or any other crime in their presence, justifying an investigatory detention.[1] At the suppression hearing, the arresting officers testified they observed appellant's car parked along side a second vehicle on a narrow two-lane road, completely blocking the road to other traffic. Believing the parked cars created a safety

hazard, the officers initiated an investigative stop of the vehicles.

■ A violation of a traffic law is sufficient authority for an officer to stop a vehicle. *See Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim.App.1982); *Valencia v. State*, 820 S.W.2d 397, 400 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (holding "[a]fter an officer has validly stopped a vehicle for a traffic offense, the officer may conduct a brief investigative detention of the occupants of the vehicle, based upon his observations of suspicious activity by the occupants of the vehicle before and after the stop, combined with his knowledge of the area and the frequency of crime in the area, and the reasonable inferences to be drawn from the behavior of the occupants of the vehicle"). A routine traffic stop is a temporary investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). Moreover, an officer's observation of a traffic violation is probable cause to arrest the driver. *See Williams v. State*, 726 S.W.2d 99, 101 (Tex.Crim.App.1986). In this case, the record establishes that the driver of appellant's car violated section 95(a)1a of article 6701d of the Texas Revised Civil Statutes, which prohibits a person from stopping, standing or parking a vehicle "[o]n the roadway side of any vehicle stopped or parked at the edge or curb of a street." TEX.REV.CIV. STAT. ANN. art. 6701d, § 95(a)(1)(a) (Vernon 1977); *see also* § 153 (authorizing any peace officer to arrest without warrant any person found committing a violation of any provision of article 6701d). Therefore, the officers had reasonable suspicion to stop appellant's car and probable cause to arrest its driver.

■ Appellant, nevertheless, maintains the officers did not have reasonable suspicion to detain him for investigatory purposes. An investigative stop of an automobile results in the seizure of both the driver and the passenger. *See Wright v. State*, 959 S.W.2d 355, 356 (Tex.App.—Austin 1998, pet. filed) (dis-

---

1. Although appellant asserts error under the Texas and United States Constitutions regarding the initial stop, he does not separate and sufficiently distinguish between state and federal constitutional issues. in his first two points of error. Specifically, he does not provide argument, analysis or authority indicating how his rights under the Texas Constitution exceed or differ from any provided to him under the United States Constitution. Therefore, relying on the language in *Arnold v. State*, 873 S.W.2d 27, 33 n. 4 (Tex. Crim.App.1993), we decline to address a state constitutional issue under these points of error.

cussing passenger's standing to complain of admissibility of evidence where initial stop was unlawful). Moreover, a passenger in an automobile is subject to a temporary investigative detention in the same manner as a pedestrian. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App.), *cert. denied*, — U.S. —, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997). Because appellant was a passenger in an automobile lawfully detained for a traffic violation, the officers were justified in detaining appellant for investigative purposes. Accordingly, we overrule appellant's first and second points of error.

### B. REASONABLENESS OF SEIZURE

In his third and fourth points of error, appellant contends the officers' investigative detention exceeded its constitutional parameters, resulting in an illegal warrantless arrest. Both state and federal courts recognize three categories of interaction between police and citizens: encounters, investigative detentions, and arrests. *See e.g., Florida v. Royer*, 460 U.S. 491, 497–502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Francis v. State*, 896 S.W.2d 406, 408 (Tex.App.—Houston [1st Dist.] 1995), *pet. dism'd improvidently granted*, 922 S.W.2d 176 (Tex.Crim.App. 1996). All three categories involve attendant rights and responsibilities. *See Francis v. State*, 922 S.W.2d 176, 178 (Tex.Crim.App. 1996) (J. Baird, concurring and dissenting). Moreover, "because there is a continuum of human interaction, what may begin as a consensual encounter can readily become an investigative detention, which may evolve into an arrest." *Id.*

■ An encounter is a friendly exchange of pleasantries or mutually useful information. *See Terry v. Ohio*, 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Francis*, 922 S.W.2d at 178. The Fourth Amendment is not implicated in an encounter because a police officer is not required to possess any particular level of suspicion and a citizen is free to disregard the questions and walk away. *See United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Francis*, 922 S.W.2d at 178.

■ Unlike an encounter, an investigative detention and an arrest are seizures. *See*

*Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim.App.1995). A seizure under the Fourth Amendment to the United States Constitution and under Article I, Section 9, of the Texas Constitution occurs when a reasonable person would believe he or she was not free to leave, and that person has yielded to the officer's show of authority or has been physically forced to yield. *See Johnson*, 912 S.W.2d at 235; *California v. Hodari D.*, 499 U.S. 621, 624–29, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

■ An arrest and an investigative detention are distinguishable by the nature of the detention involved and the constitutional parameters that are applied to determine their legality. *See Johnson v. State*, 912 S.W.2d at 235. An investigative detention or stop is a brief detention of a person reasonably suspected of criminal activity to determine his identity or to maintain the status quo momentarily while obtaining more information. *See Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *Rhodes*, 945 S.W.2d at 117. An arrest occurs when a person's liberty of movement is restricted or restrained. *See Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App.1991). "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest or person arresting without a warrant." TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977).

■ To justify an investigative stop, the officer must have specific articulable facts that, in light of his experience and personal knowledge, together with inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained. *See Terry*, 392 U.S. at 21, 88 S.Ct. 1868; *Comer v. State*, 754 S.W.2d 656, 657 (Tex.Crim.App.1986). The officer must reasonably suspect that some unusual activity is occurring or has occurred, that the detained person is connected with the activity, and that the unusual activity is related to the commission of a crime. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App.1987).

To effectuate a full custodial arrest, an officer must have probable cause to believe the person arrested has committed or is committing an offense. *See Amores*, 816 S.W.2d at 411; *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *See Amores*, 816 S.W.2d at 411. The determination of probable cause hinges on "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1982) (opinion on reh'g). Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or to support a finding by a preponderance of the evidence. *See id.* The rule of probable cause seeks to accommodate the sometimes opposing interests of (1) safeguarding citizens from rash and unreasonable police conduct and (2) giving fair leeway to legitimate law enforcement efforts. *Id.* at 345–46.

The standard for distinguishing between an investigative detention and an arrest, however, is not always clear because both are seizures. *See Francis*, 922 S.W.2d at 179 (J. Baird, concurring and dissenting); *see also Amores*, 816 S.W.2d at 419 (J. Campbell, dissenting) (stating the court of criminal appeals "has not articulated a specific standard or test for determining when an investigative detention, valid at its inception, becomes so intrusive that it must be considered an arrest under article 15.22"); *Rhodes*, 945 S.W.2d at 119–120 (J. Meyers, concurring and dissenting) (stating dispositive issue between arrest and investigatory detention is whether an investigation has occurred). Texas courts, nevertheless, recognize certain parameters that define the reasonableness of an investigative detention. First, an investigative detention must be reasonably related in scope to the circumstances that justified the interference in the first place. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997). Second, "[a]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* Third, an investigative detention requires an actual investigation. *See Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Crim.App.1991). "Thus, where no investigation is undertaken the detention cannot be considered investigatory and rises to the level of an arrest." *Id.* Finally, a reviewing court may consider the attending officer's testimony as to whether a person is under arrest, but the testimony is not controlling. *See Amores*, 816 S.W.2d at 412.

In any case, a reviewing court considers the totality of the circumstances in determining whether a stop is a brief investigative detention or an arrest. *See Rhodes v. State*, 945 S.W.2d at 117–18. In viewing the totality of the circumstances, we look to the beginning of the officer's intrusion and evaluate the reasonableness of each incremental level of intrusion based on information the officer possessed at that time. *See Francis*, 896 S.W.2d at 411.

Applying this standard to the facts and circumstances surrounding appellant's initial seizure, we find Officer Griffith acted within the constitutional parameters of a reasonable investigative detention. The detention was reasonably related in scope to the circumstances that justified the interference in the first place. Griffith detained appellant in the car while he and other officers investigated a traffic offense and then arrested the driver for a separate offense. While conducting an inventory search pursuant to impoundment procedures, Griffith discovered a plastic bag of money packaged in a manner common to drug transactions. Consequently, he formed a reasonable suspicion that narcotics might be present in the vehicle. At that point, Griffith placed appellant in custody while he tried to determine who owned the car.

The force Griffith employed in placing appellant in custody was reasonable

under the circumstances. Griffith removed appellant from the car, patted him down, and handcuffed him. "[O]fficers may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety." *Rhodes,* 945 S.W.2d at 117. Because an officer's safety may be threatened by a passenger's access to weapons in an automobile, an officer may, as a matter of course, order a passenger in a lawfully stopped vehicle to exit the vehicle pending completion of the stop. *See id.* (discussing recent Supreme Court decisions in *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997), and *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). An officer may also conduct a limited pat-down search of the outer clothing for weapons during a detention if the officer fears for his safety, or that of others. *See Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App.1992). Moreover, an officer may handcuff a suspect in special circumstances, where the officer does not believe an investigative stop could be conducted safely without it. *See Rhodes,* 945 S.W.2d at 118.

In this case, the area in which Griffith stopped the vehicle was known for narcotic and gang-related activity. Griffith and other officers had been threatened, on other occasions, by gang members in the area. During the stop, a crowd of five to ten people had gathered at the corner of an intersection near the vehicles. Because he was concerned about the officers' safety and maintaining the status quo, Griffith handcuffed appellant and placed him on the other side of the patrol car. Finally, Griffith detained appellant no longer than was necessary to determine who owned the vehicle and whether drugs were present in the car.

■ The propriety of the duration of an investigative detention is determined by assessing whether an officer diligently pursued a means of investigation that was likely to dispel or confirm his suspicion quickly. *See Davis,* 947 S.W.2d at 245 (quoting *Perez v. State,* 818 S.W.2d 512, 517 (Tex.App.—Houston [1st Dist.] 1991, no pet.)). In this case, after placing appellant in custody, Griffith continued with the inventory search and discovered a certificate of title in the glove compartment, which indicated the car belonged to appellant. Following instructions from the narcotics division, Griffith drove appellant's car to the Southeast Command Center, where a drug dog alerted officers to the presence of narcotics on the money and in appellant's car. Appellant was present and uncuffed at the station when the narcotics officer conducted the dog sniff test.

■ When the drug dog alerted positive to the odor of drugs in appellant's car, the officer's reasonable suspicion of the presence of narcotics escalated into probable cause to further search the vehicle. Because of the inherent mobility of a vehicle, an officer may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime. *See United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *see also State v. Guzman,* 959 S.W.2d 631, 634 (Tex.Crim.App.1998). The search revealed drugs and a gun. Appellant said the gun belonged to him but the drugs belonged to a friend. The officers immediately arrested appellant without obtaining a warrant.

■ However, appellant contends the ninety-minute detention was unreasonable in light of *United States v. Place,* 462 U.S. 696, 700, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In *Place,* the Supreme Court determined that holding a defendant's luggage for ninety minutes for the arrival of the drug detection dog was unreasonable. *See id.* at 710, 103 S.Ct. 2637. The court reasoned the seizure of the luggage was unreasonable because police did not arrange for a drug detection dog before defendant arrived at the airport even though they knew his arrival time several hours before he arrived. *Id.* In dicta, the Court noted that it had never approved an investigative detention of a person for a prolonged ninety-minute period. *See id.* at 709–10, 103 S.Ct. 2637.

*Place,* however, is not controlling or persuasive, in this case. The Supreme Court has not defined a bright-line rule in evaluating whether an investigative detention is unreasonable. *See United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605

(1985). Instead; common sense and ordinary human experience govern over rigid criteria. *See id.* "Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. But our cases impose no rigid time limitation on Terry stops." *Id.* To impose a rigid time limit "would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation." *Id.* at 686, 105 S.Ct. 1568.

Nevertheless, it is well-established that an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Davis,* 947 S.W.2d at 245. The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *See id.* We judge the propriety of the stop's duration by assessing whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *Id.*

In this case, ninety minutes expired from the time the officers initially stopped appellant's vehicle for a traffic violation until the officers searched the vehicle at the police station. During this time, the officers secured the scene, arrested the driver, asked appellant for identification, ran a computer check on appellant, and began an inventory search of the vehicle pursuant to impoundment procedures. Some of this delay was attributable to appellant's silence. There is no evidence of how much time expired from the time the officers secured the scene until they discovered appellant owned the vehicle.

Soon after opening the trunk pursuant to the inventory search, Griffith discovered the large plastic bag filled with bundles of money. At this point, Griffith removed appellant from the car while he completed the inventory search. After determining that appellant owned the vehicle, the officers called the narcotics division and were instructed to seize the money and to bring appellant and the vehicle to the police station.

■ Safety and security reasons may justify moving a suspect from one location to another during an investigatory stop. *See*

*Royer,* 460 U.S. at 504–05, 103 S.Ct. 1319; *Perez,* 818 S.W.2d at 516. Here, Officer Bobby Lott, the narcotics dog handler, testified he did not go to the scene to investigate the vehicle or money because of traffic conditions, crowds, and other dogs in the area that might interfere with the search. Instead, he requested the officers transport appellant and the vehicle to the police station. Griffith's partner also testified that the site of the traffic offense was becoming an unsafe environment in which to conduct an investigation because of the number of people congregated around the scene. Griffith testified that he brought appellant to the station because the vehicle that he suspected contained narcotics belonged to appellant. He also said department policy authorizes officers to confiscate money over $1000 and require the owner to show proof of how he received the money.

Griffith said the drive from the scene to the station was approximately one mile and took no longer than three to four minutes. Once at the station, the officers employed a minimally intrusive method of investigation to confirm their suspicions, i.e., the drug dog. *See Sharpe,* 470 U.S. at 687, 105 S.Ct. 1568. The officers did not continue to hold appellant after all legitimate components of the investigative detention had been completed. Instead, they arrested him when they had probable cause to arrest him. From this record, we find appellant's detention to be reasonable under the circumstances.

■ Appellant's warrantless arrest was also reasonable. State law, and not federal law, governs the legality of a state arrest so long as state law does not violate federal constitutional protections against unreasonable searches and seizures. *See Amores,* 816 S.W.2d at 413. Texas law requires a warrant for any arrest unless one of the statutory exceptions is met. *See Anderson v. State,* 932 S.W.2d 502, 505 (Tex.Crim.App.1996), *cert denied,* —— U.S. ——, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997). These statutory provisions require the legal equivalent of probable cause. *Amores,* 816 S.W.2d at 413.

■ Here, the officers had probable cause to believe appellant committed a felo-

ny, i.e., possession of cocaine, in their presence. *See* Tex. Health & Safety Code Ann. § 481.115(b) (Vernon Supp.1998). The officers discovered a gun and cocaine behind the dashboard of appellant's car. The officers knew appellant owned the car and the gun hidden in the same location as the cocaine; thus, they could reasonably infer appellant also owned the cocaine.

Article 14.01(b) of the code of criminal procedure provides for a warrantless arrest for any offense committed within the officer's presence or view. *See* Tex.Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1977). Because the officers had probable cause to believe appellant committed a felony offense in their presence, the officers were justified in arresting appellant without a warrant under section 14.01(b). *See also Christopher v. State*, 639 S.W.2d 932, 935 (Tex.Crim.App.1982) (holding a peace officer, after a bona fide stop for a traffic offense, may then make an additional arrest for any other offense discovered during the investigation), *overruled on other grounds by Preston v. State*, 700 S.W.2d 227 (Tex.Crim.App.1985); *Valencia*, 820 S.W.2d at 399 (stating the same).

■ In the alternative, appellant argues that even if the investigative detention is permissible under the United States Constitution, the detention is not permissible under the Texas Constitution. Texas, however, follows federal precedent in construing whether a person has been seized under Article I, Section 9 of the Texas Constitution. *See Johnson v. State*, 912 S.W.2d 227, 236 (Tex.Crim.App.1995); *see also Tate v. State*, 939 S.W.2d 738, 750 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd) (stating "[a]bsent an affirmative act of the Texas Legislature or decision by the Court of Criminal Appeals overruling earlier decisions in this area, this court will interpret Article I, § 9 as consistent with the interpretation of the Fourth Amendment by the United States Supreme Court and the Court of Criminal Appeals").

Because the investigatory detention and the arrest were reasonable under both the federal and state constitutions, the trial court did not err in denying appellant's motion to suppress evidence. Accordingly, we overrule appellant's third and fourth points of error.

## III. Validity of Inventory Search

In his fifth and sixth points of error, appellant contends the inventory search of his car was illegal because the vehicle was unlawfully impounded. Appellant argues the State did not present evidence establishing that an alternative to impoundment was unavailable and that police followed department impoundment procedures.

■ An inventory search is permissible under the federal and state constitutions if conducted pursuant to a lawful impoundment. *See South Dakota v. Opperman*, 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Delgado v. State*, 718 S.W.2d 718, 721 (Tex.Crim.App.1986). Impoundment is valid if police place the driver of the vehicle under custodial arrest and have no other alternatives available other than impoundment to insure protection of the vehicle. *See Delgado*, 718 S.W.2d at 721. Factors the courts consider in determining the reasonableness of impoundment when impoundment follows custodial arrest include whether (1) someone was available at the scene of the arrest to whom police could have given possession of the vehicle; (2) the vehicle was impeding the flow of traffic or was a danger to public safety; (3) the vehicle was locked; (4) the detention of the arrestee would likely be of such duration as to require police to take protective measures; (5) there was some reasonable connection between the arrest and the vehicle; and (6) the vehicle was used in the commission of another crime. *See Gords v. State*, 824 S.W.2d 785, 787–88 (Tex.App.—Dallas 1992, pet. ref'd) (citations omitted). The State bears the burden to prove a lawful impoundment. *See Delgado*, 718 S.W.2d at 721.

■ Here, the State established a lack of reasonable alternatives to justify impoundment of the car. First, there was no one available at the scene to whom officers could have released the car. Griffith testified the officers arrested the driver of appellant's vehicle after learning he did not have a driver's license or proof of insurance. Griffith's partner testified that Houston Police Department policy forbids officers from releasing a motor

vehicle to a person if they do not have their driver's license with them. Appellant produced only a Texas identification card even though state computer records indicated that appellant had a valid driver's license. Moreover, at the time the officers initiated impoundment procedures they were unaware that appellant was the owner of the vehicle. In addition, even though the Houston Police Department policy permits release of a vehicle following custodial arrest of the driver if the driver authorizes release of the vehicle to someone at the scene, the driver did not authorize release of the vehicle. Therefore, following department impoundment procedures, the officers initiated impoundment procedures.

■ Second, the record reflects the vehicle was impeding the flow of traffic and creating a safety hazard. Griffith testified the cars blocked off the street, creating a safety hazard. Appellant, however, complains the State presented "no evidence that the vehicle could not have been legally parked on the side of the street, where it would not have been an impediment to traffic." In fact, Griffith's partner testified the street was narrow, but a vehicle could have been parked on the grass next to the road. Police, however, "need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives, did, in fact, exist." *Mayberry v. State*, 830 S.W.2d 176, 180 (Tex. App.—Dallas 1992, pet ref'd). The record does not reflect such evidence. At the time impoundment procedures were initiated, the officers did not know who owned the vehicle and therefore, could not inquire if the owner would prefer to have the vehicle parked beside a two-lane road instead of impoundment. By the time the officers discovered the true owner, they had also discovered the bag of money in the trunk of the vehicle, which prompted further investigation of the car.

Third, at the time police initiated impoundment procedures, the driver of the vehicle was under arrest; thus, the detention of the driver would likely be of such duration as to require police to take protective measures. Fourth, there was some reasonable connec-

tion between the driver's arrest, the vehicle, and appellant's detention. The officers initiated the stop because the vehicle was illegally parked. After arresting the driver because he had no license or insurance to drive the car, the officers initiated impoundment procedures. While searching the trunk pursuant to department procedures, the officers discovered the bundles of money, prompting Griffith to place appellant into custody while Griffith searched the vehicle for evidence of ownership. There is no evidence, however, the officers knew the vehicle had been used in the commission of another crime before they initiated impoundment procedures.

Appellant claims even if the vehicle were lawfully impounded, "the State failed to demonstrate that an inventory search could or would have occurred." He complains Griffith testified only to a general inventory procedure when keys are given to a wrecker driver, but did not address specific inventory procedures. Moreover, he complains the State did not provide evidence that a wrecker driver ever arrived at the scene.

■ To be lawful, an inventory search must not deviate from police department policy. *See Moberg v. State*, 810 S.W.2d 190, 195 (Tex.Crim.App.1991). The State may satisfy this burden by showing an inventory policy existed and the policy was followed. *See id.* Griffith testified that, after arresting the driver, his partner called a wrecker to impound the car, and he and another officer began an inventory search of the car. When asked about inventory procedures of the Houston Police Department, Griffith said, "Any time [sic] we give the wrecker driver the keys to a vehicle, we inventory the complete interior of the vehicle as well as the trunk." Griffith also testified that department policy and procedure requires an officer to take an inventory of any area that is locked by key to protect the department from accusations of theft if the property is stolen while the vehicle is in the storage lot. These statements, along with others previously noted regarding the search, are sufficient to show that an inventory search policy existed and that the policy was followed.[2]

---

**2.** Griffith's partner testified the car was removed

from the scene at the direction of the narcotics

*See Mayberry,* 830 S.W.2d at 181 (noting appellant had opportunity to inquire about substance of inventory policy and raise specific questions regarding its validity).

■ In the alternative, appellant argues the state constitution requires police to investigate the existence of an alternative and less intrusive means to impoundment and an inventory search. Texas courts, however, are not bound by decisions of the United States Supreme Court in deciding cases on independent state constitutional grounds. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim. App.1991). With a few exceptions, none of which are applicable here, Texas courts have not deviated from federal analysis when interpreting search and seizure rights under Article I, Section 9 of the Texas Constitution. *See Aitch v. State,* 879 S.W.2d 167, 171 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *but see Autran v. State,* 887 S.W.2d 31, 41–42 (Tex.Crim.App.1994) (plurality opinion) (holding inventory searches of closed containers violate Article I, Section 9 of the Texas Constitution).

Nevertheless, appellant claims *Gords v. State,* 824 S.W.2d 785 (Tex.App.—Dallas 1992, pet. ref'd), held the Texas Constitution provides greater protection in inventory searches than the Fourth Amendment. In *Gords,* the Dallas Court of Appeals said, "Texas courts have consistently held that impoundment is lawful only when no other reasonable alternative is available to insure the protection of the vehicle." *Id.* at 787. In applying the facts of *Gords* to the factors courts traditionally consider in determining the reasonableness of impoundment, the court of appeals concluded impoundment was unreasonable because "there were other people at the arrest site to whom the car presumably could have been given." *Id.* at 788. The Dallas Court of Appeals later distinguished *Gords* in a case where "the State sufficiently established a lack of reasonable

alternatives to justify impoundment of the car." *Mayberry,* 830 S.W.2d at 180. The Dallas court of appeals noted in the same opinion that "police need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist." *Id.* We find the impoundment was reasonable under *Gords* and *Mayberry.* Therefore, we overrule appellant's fifth and sixth points of error.

## IV. Legality of Second Search of Vehicle

In points of error seven through ten, appellant maintains the trial court erred in denying his motion to suppress on state and federal constitutional grounds because the second search of his vehicle was not legal.[3] Appellant attacks the legality of the dog sniff of the money at the police station and the subsequent search of his car. Appellant claims the dog sniff of the money was illegal because the seizure of the money became illegal by the passage of time. He further claims the dog sniff of the car was illegal because the dog sniff of the money was illegal. In the alternative, appellant argues the dog's positive alert on the money did not establish probable cause for the dog to sniff the car.

### A. Detention of the Money and Vehicle

■ Appellant first contends the officers lacked reasonable suspicion to detain the money and his vehicle for ninety minutes; therefore, the dog sniff of the money and the subsequent sniff of the car were illegal. The principles of *Terry v. Ohio* and its progeny apply to the seizure of personal property. *See Place,* 462 U.S. at 706, 103 S.Ct. 2637; *Davis,* 947 S.W.2d at 243. "In sum, for an intrusion on such personalty, reasonable suspicion is required and, even if reasonable suspicion exists, the detention must be tem-

division because the scene was becoming an unsafe environment for the officers to safely conduct their investigation. He said the car was towed later from the police station.

3. Although appellant argues the drug sniff test was illegal under the Texas and the United States Constitution in points of error eight and ten, he

does not provide argument, analysis, or authority indicating how his rights under the state constitution exceed or differ from those under the federal constitution. Therefore, we decline to address any state constitutional claim under these points of error. *See Arnold,* 873 S.W.2d at 33 n. 4.

porary and last no longer than necessary to effectuate the purpose of the intrusion." *Davis*, 947 S.W.2d at 244.

The facts of *Place* are distinguishable from the facts of this case. In *Place*, the Supreme Court found the ninety-minute detention of the defendant's luggage was unreasonable because the police were aware of the defendant's arrival time for several hours and could have arranged for a trained narcotics dog in advance, thus avoiding the necessity of holding defendant's luggage. *See Place*, 462 U.S. at 709–10, 103 S.Ct. 2637 (noting in assessing the effect of the length of the detention, the court takes into account whether the police diligently pursued their investigation); *see also Glenn v. State*, 967 S.W.2d 467, 473 (Tex.App.—Amarillo 1998, pet. granted). Unlike *Place*, the officers in this case had no advance warning that appellant's vehicle might contain narcotics. Moreover, the record shows the officers diligently pursued their investigation. Griffith formed a reasonable suspicion that the vehicle might contain narcotics after finding money bundled in a manner common to drug transactions pursuant to a lawful inventory search. Consequently, he detained appellant and continued to search the vehicle to determine ownership. After finding that appellant owned the vehicle, Griffith called narcotics officers, who instructed him to transport the money, the vehicle, and appellant to the police station, where a trained narcotics dog sniffed the money and the vehicle. The same facts that gave rise to appellant's lawful ninety minute detention also support the State's detention of the money and the vehicle. Therefore, we find the dog sniff of the money was not unlawful. Accordingly, we overrule appellant's seventh and ninth points of error.

**B.  SNIFF AND SEARCH OF THE VEHICLE**

Next, appellant contends the warrantless search of the interior of his vehicle was illegal because the dog's positive alert on the money did not provide probable cause to search the vehicle. The officers did not initially search the interior of appellant's car. After alerting positive for drugs on the bundles of money, Dozer, a trained drug detection dog, sniffed appellant's car. Officer Lott

testified that Dozer worked her nose slowly across the grill of the car from the right quarter panel toward the left front quarter panel and down the side. When she got to the front driver's side door, which was open, she entered the vehicle. Following a scent cone, Dozer alerted on the center dash area by scratching and biting at the radio.

A canine sniff is not a search under the Fourth Amendment of the United States Constitution or under Article I, Section 9 of the Texas Constitution. *See Place*, 462 U.S. at 707, 103 S.Ct. 2637; *Hill v. State*, 951 S.W.2d 244, 250 (Tex.App.—Houston [14th Dist.] 1997, no pet). Moreover, a "temporary detention of an automobile to allow an olfactory inspection by a police dog trained to detect the odor of illegal drugs is not offense to the Fourth Amendment when based on a reasonable suspicion that the automobile contains narcotics." *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex.App.—Fort Worth 1998, pet. ref'd). In this case, the manner in which the money was packaged and the dog's positive alert on the money reinforced the officer's reasonable suspicion that appellant's vehicle might contain narcotics. Therefore, the canine sniff was not an unreasonable detention of appellant's vehicle nor an impermissible search of the car.

Appellant, however, contends the officers should have obtained a search warrant from a neutral and detached magistrate based on probable cause before allowing the dog to sniff the interior of his vehicle. Appellant contends a warrant is necessary to show the reliability of the particular dog along with other facts because "the use of drug detecting dogs is not foolproof and their use has lead to serious intrusions upon the privacy of innocent people." Appellant also argues a warrant is necessary because "studies show that most cash in circulation contains sufficient quantities of cocaine to alert a trained dog."

"The United States Supreme Court has failed to establish guidelines for the reliability of 'sniff' searches but, in spite of their relatively minor inaccuracies, we are required to find probable cause for a search and even for an arrest based on a trained canine's 'alert.' " *See Walsh v. State*, 743

S.W.2d 687, 689 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (citing *Place*, 462 U.S. at 696, 103 S.Ct. 2637; *Royer*, 460 U.S. at 491, 103 S.Ct. 1319). Dozer, the narcotics dog, was trained and certified for narcotic detection. He alerted on the money found in appellant's car, thus giving rise to probable cause to search appellant's vehicle. *See Glenn*, 967 S.W.2d at 472.

■ Appellant argues even if the dog alert amounted to probable cause, the officers could not search the interior of the car without first obtaining a search warrant unless there were exigent circumstances. In this case, officers needed only probable cause to search appellant's vehicle. "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *see also State v. Guzman*, 959 S.W.2d 631, 634 (Tex.Crim. App.1998) (holding "automobile exception to the Fourth Amendment of the United States Constitution does not require the existence of exigent circumstances in addition to probable cause"). After Dozer gave indications that drugs were in appellant's car, reasonable suspicion ripened into probable cause to search the vehicle without a warrant.

Because the search of appellant's vehicle was lawful, the trial court did not err in denying appellant's motion to suppress evidence obtained during the search. Therefore, we overrule appellant's eighth and tenth points of error.

Accordingly, we affirm the judgment of the court below.