Opinion issued May 3, 2007









Opinion issued May 3, 2007






 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS. 01-06-00206-CR

          01-06-00207-CR

          01-06-00208-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



FELIX A. RUIZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause Nos. 1045941, 1045942, & 1045943

 








 



MEMORANDUM OPINION

 

                Felix Ruiz pleaded guilty to the
felony offense of possession with intent to deliver cocaine weighing more than
four grams and less than two hundred grams, as well as two separate offenses of
felon in possession of a firearm.  In accordance with an agreed punishment
recommendation from the State, the trial court assessed punishment at ten
years’ confinement for the cocaine offense and five years’ confinement for each
of the weapons offenses.  On appeal, Ruiz contends the trial court erred in
denying his motion to suppress.  We affirm.

Background

          In February 2005, Harris County
Deputy M. Nations received an anonymous tip that Ruiz was trafficking in
narcotics and that he kept large amounts of cocaine in unit B-12 of a storage
facility located at 9030 North Freeway in Houston.  Nations and his undercover
team set up surveillance at the storage facility the following day.  Around
10:30 a.m., a vehicle stopped in front of unit B-12.  The passenger, who was
later identified as Ruiz, exited the vehicle and unlocked the door to the
storage unit.  He emerged a few minutes later with a black garbage bag and a
small television set, which he placed in the back seat of the vehicle.  The
vehicle then drove away.

          Nations radioed to
Uniformed Narcotics Deputy J. Savell that, based on what he had just observed,
he suspected Ruiz might be transporting a large quantity of narcotics.  He gave
Savell the license plate number of the vehicle in which Ruiz was riding and
asked Savell to stop the vehicle if he obtained probable cause.  Savell
conducted a vehicle registration check using his onboard computer and
discovered that the vehicle’s registration was expired.  He therefore stopped
the vehicle.

As he approached the vehicle, the
driver, Vonda Jackson, rolled down her window, and Savell detected a strong
odor of fresh marihuana from inside the vehicle.  Savell informed Jackson that he had pulled her over because her registration was expired.  Jackson responded that she had just left the registration office and produced a receipt for
the renewed registration time-stamped earlier that morning.[1] 
Savell’s partner, Deputy R. Stech, noticed that the vehicle’s inspection
sticker was also expired.

          Because they smelled
marihuana, the deputies asked both Jackson and Ruiz to exit the vehicle.  While
Stech placed Ruiz in the back of a patrol car, Nations asked Jackson for
consent to search her vehicle.  She agreed.  The deputies searched the vehicle
and recovered eight grams of marihuana from a shoebox that they found inside
the black garbage bag Ruiz had placed in the vehicle.  They also found a large
amount of currency concealed in a sock in the back seat.  Savell radioed
Nations to inform him that they had found marihuana in the vehicle.

          Nations arrived at the
scene a few minutes later.  He testified that Ruiz was already handcuffed and
detained in the back seat of the patrol car when he arrived.  Nations read Ruiz
his Miranda[2] warnings and asked
for permission to search the storage unit.  He then removed Ruiz from the patrol
car, took off his handcuffs, let him see a voluntary consent-to-search form,
read it to him verbatim and further explained it, and asked Ruiz if he understood
English.  Ruiz indicated that he did, looked at the form, said he understood
it, and signed it.  Nations then re-handcuffed Ruiz and transported him to the
storage facility.  Jackson was free to leave and did not follow them to the
storage facility.

          When they arrived at the
facility, Ruiz gave Nations his keys to unit B-12.  Deputies found 7.3 grams of
cocaine; a large, heavy steel press used to compress cocaine into packages; an
electronic scale; and a Beretta 9 millimeter pistol with magazines and
ammunition inside the storage unit.  Nations then asked Ruiz where he was
living, and Ruiz responded that he was staying at an EconoLodge motel down the
street.  Nations asked Ruiz for consent to search his motel room and, after
removing Ruiz from the patrol car and taking off his handcuffs, Nations again
read Ruiz a voluntary consent-to-search form.  Ruiz said he understood the form
and signed it.  Nations re-handcuffed Ruiz and transported him to the
EconoLodge.  Deputies found twenty-nine grams of cocaine, a scale with cocaine
residue on it, a Colt 45, and three magazines with ammunition inside Ruiz’s
room.  Nations then asked Ruiz for permission to search his vehicle, which was
parked at the EconoLodge, and Ruiz signed another voluntary consent-to-search
form for his vehicle.[3]  Nations recovered a
large amount of currency and jewelry from the glove box.

          Ruiz testified that after
he was placed in the patrol car at the scene of the traffic stop, an officer in
civilian clothes arrived and informed him that police were going to search his
storage unit.  Officers then transported him to the storage facility.  After
they arrived, two men got into the patrol car on either side of him, showed him
the consent form, and said, “If you don’t sign this, we going to f[@*!] you
over and we going to f[@*!] over your fiancée.  If you don’t sign this, we
going to go in there and search the place anyway.  If you sign it, we let her
go and we just do you better.”  Ruiz told the men that he was not going to sign
the form, which prompted one of them to knock Ruiz’s hat off his head.  Ruiz
testified that he felt intimidated because he did not know who the men were. 
They did not identify themselves, and after he saw their weapons, he decided to
sign both the consent to search the storage unit and the consent to search his
motel room because he “feared for his life.”[4]  Ruiz testified that he
was not handcuffed and that no one read him his Miranda warnings before
asking him to sign the consent forms.

          Ruiz’s girlfriend, Jackson,
corroborated his testimony.  She testified that her car did not smell of
marihuana, and that she did not give officers permission to search her vehicle. 
After the traffic stop, she followed Ruiz and the officers to the storage
facility.  She parked behind the patrol car and saw two undercover officers get
into the patrol car on either side of Ruiz.  The officers talked to Ruiz for
ten to fifteen minutes.  She saw Ruiz shake his head “no” and then saw an
officer knock Ruiz’s hat off his head.  After that, the officers exited the car
and began searching Ruiz’s storage unit.

          Ruiz moved to suppress the
evidence obtained during the search of his storage unit, motel room, vehicle,
and Jackson’s vehicle.  After hearing evidence and reading the parties’
memoranda of law, the trial court denied Ruiz’s motion to suppress.  The court
found that the traffic stop was valid, that Ruiz was read his Miranda
warnings, and that he voluntarily consented to the various searches.  The trial
court then accepted Ruiz’s guilty pleas and assessed punishment.

Motion to Suppress

Standard of Review

          In reviewing a trial
court’s ruling on a motion to suppress, we apply the bifurcated standard of
review articulated in Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.
1997).  We defer to a trial court’s determination of historical facts, and
review de novo the trial court’s application of the law of search and seizure. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing Guzman,
955 S.W.2d at 88–89).  If the issue involves the credibility of a witness, we
give greater deference to a trial court’s ruling, as a trial court is in a
better position to evaluate the credibility of witnesses before it.  Guzman,
955 S.W.2d at 87–89.  The trial court may choose to believe or disbelieve all
or any part of a witness’s testimony.  State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  If the trial court is called upon to apply the law to
the facts, and the ultimate resolution of the issue does not turn on an
evaluation of credibility and demeanor of a witness, we review that issue de
novo.  Guzman, 955 S.W.2d at 89.

Reasonableness of the Seizure

          Ruiz contends the trial
court erred in denying his motion to suppress because his warrantless arrest,
and the warrantless searches conducted subsequent thereto, violate the Fourth
Amendment to the United States Constitution and article I, section 9 of the
Texas Constitution.[5]  In particular, Ruiz
asserts that he was placed under arrest the moment officers removed him from Jackson’s vehicle and locked him into the back of the patrol car.  He reasons that deputies
did not have probable cause to arrest him after they merely smelled marihuana,
and that the consents to search are therefore tainted by the illegal arrest. 
Alternatively, Ruiz posits that, if he was detained rather than arrested, then
the length of the detention exceeded the permissible scope of a Terry[6]
stop, and the evidence seized from the illegal detention must be
suppressed.  Ruiz does not challenge the validity of the initial traffic stop.

          Both state and federal
courts recognize three categories of interaction between police and citizens:
encounters, investigative detentions, and arrests.  See, e.g., Florida
v. Royer, 460 U.S. 491, 497–502, 103 S. Ct. 1319, 1324–26 (1983); Francis
v. State, 896 S.W.2d 406, 408–09 (Tex. App.—Houston [1st Dist.] 1995), pet.
dism’d, improvidently granted, 922 S.W.2d 176 (Tex. Crim. App. 1996).  All
three categories involve attendant rights and responsibilities.  Josey v.
State, 981 S.W.2d 831, 838 (Tex. App.—Houston [14th Dist.] 1998, pet.
ref’d).  Moreover, “because there is a continuum of human interaction, what may
begin as a consensual encounter can readily become an investigative detention,
which may evolve into an arrest.”  Id. (internal quotation marks
omitted).

An encounter is a friendly exchange
of pleasantries or mutually useful information.  See Terry v. Ohio, 392 U.S. 1, 13, 88 S. Ct. 1868, 1875 (1968); Francis, 922 S.W.2d at 178.  The
Fourth Amendment is not implicated in an encounter because a police officer is
not required to possess any particular level of suspicion and a citizen is free
to disregard the questions and walk away.  See United States v. Mendenhall,
446 U.S. 544, 553–54, 100 S. Ct. 1870, 1877 (1980); Francis, 922 S.W.2d
at 178.

Unlike an encounter, an investigative
detention and an arrest are seizures.  See Johnson v. State, 912 S.W.2d
227, 235 (Tex. Crim. App. 1995).  A seizure under the Fourth Amendment to the
United States Constitution and under article I, section 9 of the Texas
Constitution occurs when a reasonable person would believe he was not free to
leave, and that person has yielded to the officer’s show of authority or has
been physically forced to yield.  Josey, 981 S.W.2d at 838.

An arrest and an investigative
detention are distinguishable by the nature of the detention involved and the
constitutional parameters that are applied to determine their legality.  See
Johnson, 912 S.W.2d at 235.  An investigative detention or stop is a brief
detention of a person reasonably suspected of criminal activity to determine
his identity or to maintain the status quo momentarily while obtaining more
information.  See Adams v. Williams, 407 U.S. 143, 146–47, 92 S. Ct.
1921, 1923 (1972); Terry, 392 U.S. at 21–22, 88 S. Ct. at 1880;
Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).  An arrest
occurs when a person’s liberty of movement is restricted or restrained.  See
Amores v. State, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).  “A person is
arrested when he has been actually placed under restraint or taken into custody
by an officer or person executing a warrant of arrest, or by an officer or person
arresting without a warrant.”  Tex. Code
Crim. Proc. Ann. art. 15.22 (Vernon 2005).

To justify an investigative stop, the
officer must have specific articulable facts that, in light of his experience
and personal knowledge, together with inferences from those facts, would
reasonably warrant the intrusion on the freedom of the citizen detained.  See
Terry, 392 U.S. at 21, 88 S. Ct. at 1880; Comer v. State, 754 S.W.2d
656, 657 (Tex. Crim. App. 1986).  The officer must reasonably suspect that some
unusual activity is occurring or has occurred, that the detained person is connected
with the activity, and that the unusual activity is related to the commission
of a crime.  See Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).

To effectuate a full custodial
arrest, an officer must have probable cause to believe the person arrested has
committed or is committing an offense.  See Amores, 816 S.W.2d at 411.  Probable
cause to arrest exists when the facts and circumstances within the arresting
officer’s knowledge and of which he has reasonably trustworthy information are
sufficient in themselves to warrant a person of reasonable caution to believe
an offense has been or is being committed.  See id. at 413.  The
determination of probable cause hinges on “the factual and practical
considerations of everyday life on which reasonable and prudent [people], not
legal technicians, act.”  Woodward v. State, 668 S.W.2d 337, 345 (Tex. Crim.
App. 1982) (opinion on reh’g) (internal citation omitted).  Probable cause
requires more than mere suspicion but far less evidence than that needed to
support a conviction or to support a finding by a preponderance of the
evidence.  See id.  The rule of probable cause seeks to accommodate the
sometimes opposing interests of (1) safeguarding citizens from rash and
unreasonable police conduct and (2) giving fair leeway to legitimate law
enforcement efforts.  See id. at 345–46.

The standard for distinguishing
between an investigative detention and an arrest is not always clear, however,
because both are seizures.  Josey, 981 S.W.2d at 839; see also Akins
v. State, 202 S.W.3d 879, 885 (Tex. App.—Fort Worth 2006, pet. ref’d)
(“Distinguishing between the two types of seizures can be difficult,
particularly because the distinction rests on a fact-specific inquiry rather
than clearly delineated criteria.”).  Texas courts, nevertheless, recognize
certain parameters that define the reasonableness of an investigative
detention.  First, an investigative detention must be reasonably related in
scope to the circumstances that justified the interference in the first place.  See
 Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  Second,
“[a]n investigative detention must be temporary and last no longer than is
necessary to effectuate the purpose of the stop.  The investigative methods
employed should be the least intrusive means reasonably available to verify or
dispel the officer’s suspicion in a short period of time.”  Id. at 245
(internal citation omitted).  Third, an investigative detention requires an
actual investigation.  See Burkes v. State, 830 S.W.2d 922, 925 (Tex. Crim.
App. 1991).  “Thus, where no investigation is undertaken the detention cannot
be considered investigatory and rises to the level of an arrest.”  Id.  Finally, a reviewing court may consider the attending officer’s testimony as to
whether a person is under arrest, but the testimony is not controlling.  See
Amores, 816 S.W.2d at 412.

In any case, a reviewing court
considers the totality of the circumstances in determining whether a stop is a
brief investigative detention or an arrest.  See Francis, 896 S.W.2d at 411. 
In viewing the totality of the circumstances, we look to the beginning of the
officer’s intrusion and evaluate the reasonableness of each incremental level
of intrusion based on information the officer possessed at that time.  See id.

Applying these principles to the
present case, we conclude that Ruiz was detained, rather than arrested, when
Deputy Stech removed him from Jackson’s vehicle and placed him in the back of
the patrol car.  At the time Stech did so, police had initiated a valid traffic
stop of the vehicle in which Ruiz was riding, and had detected a strong odor of
marihuana emanating from the vehicle.  At that point, deputies formed a
reasonable suspicion that marihuana might be present in the vehicle, and they
therefore detained Ruiz in the back of the patrol car so that they could
investigate whether marihuana was in fact present in the vehicle.  We hold that
these actions fell within the parameters of a reasonable investigative
detention.  See Josey, 981 S.W.2d at 839–41 (holding that officer acted
within parameters of reasonable investigative detention when he stopped vehicle
in which appellant was riding for traffic offense, discovered plastic bag of
money packaged in manner common to drug transactions while conducting inventory
search, and therefore handcuffed appellant and placed him on other side of
patrol car while he determined whether narcotics were present in vehicle); Francis,
896 S.W.2d at 411–12 (holding that officer’s actions were consistent with
execution of valid investigative detention when officer placed appellant in
back of patrol car and transported him short distance to scene of alleged
burglary so he could be identified by victims).[7]

After detaining Ruiz, deputies
searched the vehicle and found eight grams of marihuana inside the black
garbage bag that Deputy Nations had watched Ruiz place in the vehicle.  This
discovery gave Nations probable cause to arrest Ruiz without first securing a
warrant.  

Warrantless arrests are authorized
only in limited circumstances and are governed primarily by Chapter Fourteen of
the Code of Criminal Procedure.  Amores, 816 S.W.2d at 413.  Article
14.01(b) authorizes a warrantless arrest for an offense committed in the
officer’s presence or within his view.  Tex.
Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005).  This statutory
provision requires the legal equivalent of probable cause.  Amores, 816
S.W.2d at 413; Josey, 981 S.W.2d at 841.

          To determine whether there
was probable cause for a warrantless arrest, we look to the totality of the
circumstances.  Amores, 816 S.W.2d at 413.  The State bears the burden
of proving the existence of probable cause.  Id.  “Probable cause exists
where the facts and circumstances within the officer’s knowledge and of which
he has reasonably trustworthy information are sufficient in themselves to
warrant a man of reasonable caution in the belief that a particular person has
committed or is committing an offense.”  Id.; see Beverly v. State,
792 S.W.2d 103, 104–05 (Tex. Crim. App. 1990).

Here, police had probable cause to
believe that Ruiz had committed an offense—namely, possession of marihuana—in
their presence.  The black garbage bag containing marihuana that deputies
recovered from the vehicle was the same bag that they had seen Ruiz remove from
his storage unit and place in the back seat of the vehicle.  Thus, because
deputies had probable cause to believe that Ruiz had committed an offense in
their presence, they were justified in arresting him without a warrant under
article 14.01(b).  See Josey, 981 S.W.2d at 841–42 (holding officers
were justified in making warrantless arrest under article 14.01(b) after they
detained appellant and discovered cocaine behind dashboard of his car).[8] 
Given the legality of the arrest, we reject Ruiz’s contention that the consents
to search were tainted by an illegal arrest.

Voluntariness of the Consents to
Search

          Even though Ruiz was
legally arrested, his consents to search still must have been freely and
voluntarily given.  De Jesus v. State, 917 S.W.2d 458, 461 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d).  Ruiz contends that they were not, as
evidenced by his testimony that he signed the consents only because he feared
for his life, and Jackson’s corroborating testimony that officers spoke
forcefully to Ruiz and knocked his hat off his head.

A voluntary consensual search is an
exception to the probable cause and warrant requirements of the Fourth
Amendment to the United States Constitution and article I, section 9 of the
Texas Constitution.  Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).  The State has the burden to prove by clear and convincing evidence
that a suspect freely and voluntarily gave his consent.  State v. Ibarra,
953 S.W.2d 242, 245 (Tex. Crim. App. 1997).  We defer to the trial court for
fact findings, and review de novo the legal question of whether consent was
voluntary.  Ross, 32 S.W.3d at 856.

Consent must not be the product of
duress or coercion, express or implied.  Reasor, 12 S.W.3d at 817
(citing Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S. Ct. 2041, 2059 (1973)).  It must be positive and unequivocal, not merely acquiescence to
a claim of lawful authority.  Carmouche v. State, 10 S.W.3d 323, 331
(Tex. Crim. App. 2000) (citing Bumper v. North Carolina, 391 U.S. 543, 548–49, 88 S. Ct. 1788, 1792 (1968)).  The fact that a defendant is in custody
does not, however, dictate that his consent is per se involuntary.  See Reasor,
12 S.W.3d at 817–18.  Whether consent is voluntary is determined from the
totality of the circumstances.  Id. at 818; see also Ohio v. Robinette, 519 U.S. 33, 40, 117 S. Ct. 417, 421 (1996).  Among the factors to
be considered in determining voluntariness include the youth, intelligence, or
education of the person; the constitutional advice (e.g., Miranda
warnings) given to the person; the length of the detention; the repetitiveness
of the questioning; and the use of physical punishment.  Reasor, 12 S.W.3d
at 818; Arroyo v. State, 881 S.W.2d 784, 789 (Tex. App.—Houston [14th
Dist.] 1994, no pet.).

          Here, Deputy Nations
testified that, before he asked Ruiz for permission to search the storage unit,
he read Ruiz his Miranda warnings.  Nations then removed Ruiz from the
patrol car, took off his handcuffs, let him see the consent form, read it to
him verbatim and further explained it, and asked Ruiz if he understood
English.  Ruiz indicated that he did, looked at the form, said he understood
it, and signed it.  Nations testified that he followed an identical procedure
for the consent form to search the motel room.  He testified that he did not
coerce Ruiz to sign either form.[9]

          The consent forms describe
the locations to be searched, identify Deputy Nations as the person to whom
consent has been given, and state in pertinent part: “I, Felix Antonio Ruiz,
having been informed by the below officers of my constitutional right not to
have a search made of my premises . . . without a search warrant and of my
right to voluntarily consent to such a search, hereby
authorize . . . a complete search . . . .  This consent is
being given . . . freely and voluntarily and with out [sic] threats or promises
of any kind and is given with my full and free consent.”

          Ruiz gave a different
version of events.  He testified that two men got into the patrol car on either
side of him, threatened him and Jackson, and knocked the hat off his head when
he told them that he was not going to sign the consent forms.  He further
testified that he felt intimidated because he did not know who the men were. 
They did not identify themselves, and after he saw their weapons, he decided to
sign both the consent to search the storage unit and the consent to search his
motel room because he “feared for his life.”[10]  Ruiz testified that he
was not handcuffed and that no one read him his Miranda warnings before
asking him to sign the consent forms.  He acknowledged, however, that he read
the consent forms and knew what they were.  Ruiz’s girlfriend, Jackson,
corroborated his testimony that officers threatened him by knocking the hat off
his head.

          Testimony by law
enforcement officers that no coercion was involved in obtaining consent is
evidence of the consent’s voluntary nature.  Martinez v. State,
17 S.W.3d 677, 683 (Tex. Crim. App. 2000).  Although Ruiz and Jackson gave
testimony that conflicted with Deputy Nations’s statements, the trial court, as
fact-finder, was free to disbelieve their testimony.  Id.; see also
Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991) (“The trial
judge is the sole fact finder at a hearing on a motion to suppress evidence
obtained in a search, and may choose to believe or disbelieve any or all of a
witness’ testimony.”); Graham v. State, 201 S.W.3d 323, 330 (Tex.
App.—Houston [14th Dist.] 2006, pet. ref’d) (“[T]he trial court was free to
believe each officer’s testimony [that consent was voluntary] and disbelieve
appellant’s testimony [that consent was involuntary].”); De Jesus, 917
S.W.2d at 462 (same).

Affording proper deference to the
trial court’s resolution of factual conflicts, we conclude that there is clear
and convincing evidence to sustain the trial court’s finding that Ruiz freely
and voluntarily consented to the searches of his storage unit and motel room.  See
Allridge, 850 S.W.2d at 492–93 (holding that there was sufficient testimony
to support trial court’s implied decision that appellant was not coerced into
giving consent where officer testified that he read appellant his Miranda
warnings and appellant voluntarily signed consent form, even though appellant
and his brother gave conflicting testimony that officer “used his foot to force
appellant’s head to the floor, and subsequently ‘jerked’ appellant off the
floor” when appellant initially refused to sign consent form).  We therefore
conclude that the trial court did not err in denying Ruiz’s motion to suppress
on the ground that his consents to search were
involuntary.                                                                                                                                                                      
                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                      

Conclusion

          We conclude that the trial
court did not err in denying Ruiz’s motion to suppress and therefore affirm the
trial court’s judgment.

          

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

Do not publish.  Tex. R. App. P. 47.2(b).









[1]
The court remarked at the suppression hearing
that Savell’s onboard computer may not have received updated information
regarding the renewed registration, since less than an hour had elapsed between
the time of the stop and the time Jackson renewed her registration.

 

 





[2]
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966); see also
Tex. Code Crim. Proc. Ann. art.
38.22, § 2 (Vernon 2005).

 

 





[3]
All three consent forms were admitted into
evidence without objection from Ruiz.

 





[4]
Ruiz testified that he signed the consent form
to search his vehicle “with no problem.”

 





[5]
We address Ruiz’s Fourth Amendment and article
I, section 9 arguments together because he failed to separately argue and brief
those contentions.  See Riddle v. State, 888 S.W.2d 1, 7–8 (Tex. Crim. App. 1994); Arnold v. State, 873 S.W.2d 27, 29 n.2 (Tex. Crim.
App. 1993); Joseph v. State, 3 S.W.3d 627, 634 n.2 (Tex. App.—Houston
[14th Dist.] 1999, no pet.).

 





[6] See Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).

 





[7]
We note that there was conflicting testimony
regarding whether Deputy Stech handcuffed Ruiz before placing him in the back
of the patrol car.  Deputy Nations testified that Ruiz was handcuffed and
detained when he arrived on the scene; Ruiz testified that he was never
handcuffed.  Even if Ruiz was handcuffed, that fact alone does not convert an
otherwise valid investigative detention into an arrest.  See In re J.D.B.,
209 S.W.3d 708, 712 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (“[H]andcuffing
is not always the equivalent of an arrest.  Handcuffing a suspect during a
temporary investigative detention can be reasonable under the circumstances and
not amount to an arrest.” (citing Rhodes v. State, 945 S.W.2d 115, 118
(Tex. Crim. App. 1997))); Akins v. State, 202 S.W.3d 879, 886 (Tex.
App.—Fort Worth 2006, pet. ref’d) (“[T]here is no bright-line rule that
handcuffing a suspect always constitutes an arrest.”); Josey v. State,
981 S.W.2d 831, 839–41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d)
(holding that appellant was detained, rather than arrested, when police
handcuffed him and placed him on other side of patrol car while they
investigated whether narcotics were present in vehicle in which appellant was
riding).

 

 





[8]
Ruiz relies on State v. Steelman, 93
S.W.3d 102 (Tex. Crim. App. 2002), to contend that the smell of marihuana is
insufficient to establish probable cause to arrest.  In Steelman,
however, police arrested an individual at a residence occupied by a number of
people, without facts specifically linking the individual arrested to the
marihuana.  See id. at 104, 109 (noting that “the officers in this case
had no idea who [inside the house] was smoking or possessing marijuana, and
they certainly had no particular reason to believe that [appellant] was smoking
or possessing marijuana”).  In contrast, here police had observed Ruiz remove
the black garbage bag from the storage unit.  Thus, facts other than the mere
odor of marihuana linked Ruiz to possession of it.

 





[9] Ruiz does not challenge the voluntariness of his consent to search his
vehicle.





[10]
Ruiz testified that he signed the consent to
search his vehicle “with no problem.”