Affirmed and Memorandum Opinion filed August 20, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00296-CR

____________

 

GIFFERT O=NEAL WILEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 1102795

 



 

M E M O R A N D U M   O P I N I O N

Appellant Giffert O=Neal Wiley challenges his conviction
for possession of between four and 200 grams of cocaine with intent to
deliver.  The jury found an enhancement paragraph to be true and assessed
punishment as confinement for 25 years.  Appellant contends the evidence is
legally and factually insufficient to support the jury=s finding that he knowingly possessed
cocaine.  Appellant further contends the trial court erred by denying his (1)
request for a Batson hearing; (2) motion to suppress evidence; and (3)
motion for mistrial following improper jury argument by the State.  We affirm.








Background

Pasadena Police Officer J. C. Rock observed appellant driving
on State Highway 225 without a front license plate on his 1994 Ford Crown
Victoria on February 1, 2007.  Officer Rock pulled up beside appellant on the
left and drove ahead to verify that appellant=s car had no front license plate.

When Officer Rock pulled up beside appellant, appellant
looked at him and immediately decelerated.  Officer Rock slowed down to
approximately 30 to 35 miles per hour to remain beside appellant before
eventually pulling over and allowing appellant to pass him.  After appellant
passed, Officer Rock pulled back onto the highway and followed him.  Appellant
took the next exit off of the highway, at which point Officer Rock activated
his lights and stopped appellant.

As Officer Rock approached appellant=s car after it was stopped, he could
see a temporary dealer tag through the rear windshield.  Appellant was
accompanied by one passenger sitting in the front passenger seat.  During the
stop, Officer Rock asked appellant to sign a consent form so that he could
search appellant=s car.  Appellant refused, and Officer Rock called for a
police canine unit to respond to the scene.

Approximately 20 minutes after Officer Rock=s call, Officer Richard Bagwell of
the Pasadena Independent School District Police Department arrived with his
police canine.  The canine walked around appellant=s car twice and alerted officers to
search the driver=s door and driver=s side taillight section for
narcotics.








Police searched the inside of the driver=s door and found no narcotics or
contraband.  Appellant stated that he did not have a key to the trunk of his
car.  Police opened the trunk without a key.  During their search of the trunk,
police noticed that a section of the trunk lining near the driver=s side taillight was pulled loose. 
Officers lifted this loose lining and discovered a clear plastic bag containing
11 grams of crack cocaine rocks.  The entire traffic stop lasted approximately
43 minutes.

Appellant was charged by indictment with possession of
between four and 200 grams of cocaine with intent to deliver.  The indictment
included an enhancement paragraph asserting that appellant had been convicted
on January 15, 2003 of felony possession of between one and four ounces of
cocaine.  Appellant faced a statutory range of punishment between five and 99
years if the enhancement paragraph were found to be not true; if the paragraph
were found to be true, the minimum punishment increased to confinement for 15
years.  See Tex. Health & Safety Code Ann. _ 481.112(d) (Vernon Supp. 2009); Tex.
Penal Code Ann. __ 12.32(a), 12.42(c)(1) (Vernon Supp. 2009).

On April 4, 2007, appellant filed a first amended motion to
suppress his statements and any physical evidence seized by police during the
February 1, 2007 traffic stop.  The trial court withheld ruling on this motion
until it held a hearing outside the jury=s presence after both sides presented
their cases in appellant=s trial.  The trial court orally denied appellant=s motion after this hearing. 

Trial began on March 31, 2008.  The State used peremptory
challenges to strike 10 venirepersons.  At the conclusion of voir dire,
appellant objected to the State=s use of peremptory challenges to strike six members of
ethnic or racial minority groups from the venire panel.  See Batson v.
Kentucky, 476 U.S. 79 (1986).  The trial court overruled appellant=s Batson challenge without a
hearing.

During the guilt/innocence phase of trial, Officers Rock and
Bagwell testified for the State, as did Pasadena Police Officers Tracy
Marshall, Phillip Rhule, and Marco Vela.  Appellant=s wife testified as the lone defense
witness.








Officer Rock testified that he did not see appellant=s temporary dealer tag while
appellant was driving.  Officer Rock further testified that his dashboard video
camera recorded his traffic stop of appellant.  This video was published to the
jury without audio as Officer Rock described for the jury what the video
showed.

Officer Rock testified that appellant spoke quickly and
stuttered during the stop, and that he stated several times without prompting
that he Ajust got the car.@  Officer Rock testified that
appellant=s temporary dealer tag was lying flat on the rear dashboard, and that he
did not see it until he walked up to the stopped car.

Officer Rock also testified that appellant initially told him
that he did not know his passenger=s last name, and that he had known
his passenger Afor a long time.@  Officer Rock testified that later during the stop appellant
said that he believed his passenger=s last name was Williams, which was
correct.  Officer Rock testified that appellant=s initial indication that he did not
know the last name of a passenger he claimed to have known Afor a long time@ Araise[d] a red flag@ in his mind.  Officer Rock testified
that he asked appellant to sign a consent to search form, and that appellant
refused because AI just bought the car.  I don=t know what=s in it.@

Officer Rock testified that he called for a police canine
unit to respond to the scene after appellant refused to consent to a search of
the vehicle.  Officer Rock testified that he did so A[b]ecause I just felt a reasonable
suspicion@ based on his interaction with appellant during the stop.  Officer Rock
testified that he formed this reasonable suspicion because appellant (1)
appeared nervous; (2) spoke quickly; (3) initially stated he did not know the
last name of his passenger whom he claimed to have known Afor a long time@; (4) seemed evasive in answering
questions; and (5) stated multiple times without prompting that he had just
bought the car the day before. 








Officer Rock testified that Officer Bagwell arrived with his
canine approximately 20 minutes after Officer Rock requested assistance from a
canine unit.  Officer Rock further testified that he did not instruct the
canine or Officer Bagwell to concentrate on any particular section of appellant=s car.  Officer Rock testified that
the canine alerted officers to check the driver=s door and the driver=s side taillight section.

Officer Rock testified that appellant did not provide a key
to the trunk of the car.  Officer Rock testified that he found no narcotics or
contraband inside the driver=s side door of appellant=s car.  Officer Rock also testified
that numerous air fresheners were in the interior of appellant=s car.

Officer Rock testified that he noticed that the lining of the
trunk was loose and not affixed to the car.  Officer Rock further testified
that when he moved the loose lining and looked underneath it, he found a clear
plastic bag containing rocks of what he suspected to be crack cocaine.  Officer
Rock testified that the contents of the bag were approximately the size of a
golf ball.

The State next called Officer Marshall, who testified that
appellant appeared nervous and stuttered Aquite a bit@ when speaking to Officer Rock during
the stop.  Officer Marshall also testified that he heard appellant tell Officer
Rock that he had just purchased the car the previous day.  Officer Marshall
further testified that he could not read anything on appellant=s temporary dealer tag until he
walked up to the stopped car and saw it on the rear dashboard.  

Officer Marshall corroborated Officer Rock=s testimony that appellant refused to
sign a consent to search form and that Officer Rock then called for a canine
unit to respond to the scene.  Officer Marshall also corroborated Officer Rock=s testimony that appellant provided
police with no key to the trunk of his car and stated that he had no key.








Officer Marshall testified that he assisted in searching the
trunk of appellant=s car after the canine finished inspecting the car.  Officer
Marshall further testified that there were approximately 15 air fresheners
located in the trunk of appellant=s car.  Officer Marshall testified
that Officer Rock found a bag of crack cocaine approximately the size of a golf
ball on the driver=s side of the trunk of appellant=s car.  Officer Marshall further
testified that he dealt primarily with appellant=s passenger, and that he found a
crack pipe in the possession of appellant=s passenger.

The State next called Officer Bagwell, who testified that he
had worked for six years with the canine that inspected appellant=s car.  Officer Bagwell described the
training and testing that he and his canine undergo to execute their duties as
a police canine unit.  Officer Bagwell testified that his canine is trained
only to detect marijuana, heroin, cocaine, and methamphetamine without
distinguishing between the four substances.

Officer Bagwell further testified that he is Avery aware@ of what his canine=s signals and mannerisms are to alert
officers to search a location for narcotics and contraband.  Officer Bagwell
testified that he did not instruct his canine to focus on any particular
section of appellant=s car during the February 1, 2007 traffic stop.  Officer
Bagwell also testified that his canine alerted officers to search the driver=s door and driver=s side taillight section of the
trunk.

Officer Bagwell testified that no narcotics or contraband
were found in the driver=s door of appellant=s car, and that it was possible that
the canine detected narcotics residue on the door that was not visible to the
naked eye.  Officer Bagwell further testified that the panel of the driver=s door was loose and not properly
affixed to the frame of the door.  Officer Bagwell also testified that he and
his canine had been involved in A[q]uite a few narcotic stops@ and located narcotics Atucked away in panels, under carpets,
seat cushions, things like that.@

Officer Bagwell corroborated the testimony of Officers Rock
and Marshall regarding the location of the crack cocaine found in appellant=s trunk.  Officer Bagwell also
corroborated Officer Rock=s testimony that several air fresheners were located within
the interior of appellant=s car.








The State next called Officer Rhule, who corroborated the
testimony of Officers Rock and Marshall that appellant had a temporary dealer
tag on his rear dashboard that he could not read through the rear windshield
until he approached the stopped car.  Officer Rhule also corroborated Officer
Rock=s testimony that appellant=s car had a rear license plate but no
front license plate.

Officer Rhule testified that he saw the drugs in appellant=s trunk after Officer Rock located
them.  Officer Rhule corroborated Officer Marshall=s testimony that numerous air
fresheners were found in the trunk of appellant=s car.  Officer Rhule also
corroborated the testimony of Officers Rock and Bagwell that several air
fresheners were located within the interior of appellant=s car.

The State next called Officer Vela, who corroborated the
testimony of Officers Rock, Bagwell, and Rhule that several air fresheners were
located within the interior of appellant=s car.  Officer Vela also
corroborated the testimony of Officers Marshall and Rhule that numerous air
fresheners were found in the trunk of appellant=s car.  Officer Vela testified that
appellant=s use of numerous air fresheners was consistent with attempting to hide
narcotics.

After the State rested its case, appellant called his wife
Felicia Wiley to testify.  Wiley testified that she and appellant purchased the
Crown Victoria from a private individual using her federal income tax refund. 
Wiley further testified that she filed her federal income tax return Aright at the beginning of February@ 2007.  Wiley also testified that the
car did not have current license plates or inspection stickers on it when she
and appellant purchased it.








Wiley testified that neither she nor appellant had a key to
the trunk of the car, and that she believed that Athe key to the trunk goes to the key
to the door.@  Wiley further testified that she and appellant had placed numerous air
fresheners within the car because rain had entered it through a window that was
stuck open, causing the car to have Aa mildew smell on the inside of it.@  Wiley also testified that she had
been convicted of murder in Harris County in 1994.

The jury found appellant guilty as charged in the indictment
and found the enhancement paragraph to be true, and sentenced appellant to
confinement for 25 years.  The trial court signed its judgment on the jury=s verdict and sentence on April 2,
2008.  Appellant appeals from this judgment.

Analysis

Appellant challenges the legal and factual sufficiency of the
evidence supporting the jury=s finding that he knowingly possessed cocaine.  Appellant
also contends that the trial court erred by denying his (1) request for a Batson
hearing; (2) motion to suppress evidence; and (3) motion for mistrial following
improper jury argument by the State.  We address each challenge in turn.

I.         Legal
Sufficiency

Appellant challenges the legal sufficiency of the evidence
supporting the jury=s finding that he knowingly possessed the cocaine found in
the trunk of his car on February 1, 2007.  In reviewing legal sufficiency of
the evidence, an appellate court will examine the evidence in the light most
favorable to the State to determine whether any rational finder of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).  When reviewing the legal sufficiency of the
evidence, we consider all evidence which the jury was permitted, whether
rightly or wrongly, to consider.  Moff v. State, 131 S.W.3d 485, 488
(Tex. Crim. App. 2004).  This court does not sit as another juror and may not
re-evaluate the weight and credibility of the evidence or substitute its
judgment for that of the fact finder.  Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999).








Reconciliation of conflicts in the evidence is within the
exclusive province of the fact finder.  See Mosley v. State, 983 S.W.2d
249, 254 (Tex. Crim. App. 1998) (en banc).  The appellate court=s duty is not to reweigh the
evidence, but to serve as a final due process safeguard ensuring only the
rationality of the fact finder.  See Williams v. State, 937 S.W.2d 479,
483 (Tex. Crim. App. 1996).  An appellate court faced with a record of facts
that supports conflicting inferences must presume _ even if not obvious from the record _ that the finder of fact resolved any
such conflicts in favor of the State, and must defer to that resolution.  Jackson,
443 U.S. at 326; Clayton, 235 S.W.3d at 778.

To establish knowing possession of a controlled substance,
the State must prove that the defendant exercised actual care, control, and
management over the contraband, and that he knew the substance in his possession
was contraband.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995).  If the defendant does not have exclusive possession of the contraband,
independent facts and circumstances must link the defendant to the contraband. 
Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

Texas courts have recognized a non-exclusive list of links
that may be used to determine whether a defendant knowingly possessed
contraband.  Evans v. State, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App.
2006) (citing Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.BHouston [14th Dist.] 2005, no
pet.)).  The number of linking factors present is not as important as the Alogical force@ they create to prove the crime was
committed.  Evans, 202 S.W.3d at 162; Olivarez, 171 S.W.3d at
291.

A link generates a reasonable inference that the defendant
knew of the contraband=s existence and exercised control over it.  Roberson v.
State, 80 S.W.3d 730, 735 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).  The use of links in our analysis
is Aa shorthand expression of what must
be proven to establish that a person possessed some kind of drug >knowingly or intentionally.=@ Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995).








Evans and Olivarez list the following links which courts
have recognized, either singly or in combination, as sufficient to establish
knowing possession of contraband: (1) the defendant=s presence when a search is
conducted; (2) whether contraband was in plain view; (3) the defendant=s proximity to and accessibility of
contraband; (4) whether the defendant was under the influence of contraband
when arrested; (5) whether the defendant possessed other contraband when
arrested; (6) whether the defendant made incriminating statements when
arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of contraband;
(10) whether other contraband or drug paraphernalia were present; (11) whether
the defendant owned or had a right to possess the place where contraband was
found; (12) whether the place where contraband was found was enclosed; (13)
whether the defendant was found with a large amount of cash; and (14) whether
the defendant=s conduct indicated a consciousness of guilt.  Evans, 202 S.W.3d
at 162 n.12; Olivarez, 171 S.W.3d at 291.








The jury heard ample evidence establishing multiple links
between appellant and the crack cocaine found in his trunk: (1) appellant owned
and was driving the vehicle in which the drugs were found; (2) Officers Rock
and Marshall testified that appellant appeared nervous and spoke rapidly and
stuttered while conversing with Officer Rock; (3) Officers Rock and Marshall
testified that appellant stated several times without prompting that he Ajust got the car@; (4) Officer Rock testified that
appellant claimed to have known his passenger Afor a long time@ but initially was unable to provide
his passenger=s last name, which Araise[d] a red flag@ in Officer Rock=s opinion; (5) appellant refused to
consent to a search of his car; (6) Officer Rock testified that appellant
seemed evasive in answering questions; (7) the testimony of multiple officers
that numerous air fresheners were located within the trunk and interior of
appellant=s car, and Officer Vela=s testimony that such use of air fresheners was consistent
with that of someone attempting to hide narcotics; (8) appellant=s passenger was found to be in
possession of a crack pipe; (9) the testimony of multiple officers that the
police canine alerted them to the presence of narcotics on the driver=s door and near the driver=s side taillight, combined with
Officer Bagwell=s testimony that the canine could have detected residue on
the driver=s door, which had a loose panel; and (10) the testimony of multiple
officers that the crack cocaine was found in a clear plastic bag hidden under
the lining of the trunk, which had been pulled loose and was no longer affixed
to the car.

Viewing all of this evidence in the light most favorable to
the State, a rational fact finder could have found beyond a reasonable doubt that
appellant knowingly possessed the 11 grams of crack cocaine found in the trunk
of his car on February 1, 2007.  See Jackson, 443 U.S. at 319; Clayton,
235 S.W.3d at 778; Evans, 202 S.W.3d at 162 n.12; Olivarez, 171
S.W.3d at 291.

We overrule appellant=s issue regarding the legal
sufficiency of the evidence supporting the jury=s finding that he knowingly possessed
the crack cocaine Officer Rock found in the trunk of his car.

II.        Factual
Sufficiency

Appellant also challenges the factual sufficiency of the
evidence supporting the jury=s finding that he knowingly possessed the cocaine found in
the trunk of his car on February 1, 2007.  Appellant=s factual sufficiency challenge
comprises less than one page of his brief and contains no citations to the
record or references to any specific evidence found in the record.








An appellant=s brief Amust contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.@  Tex. R. App. P. 38.1(i); see
also McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (en
banc).  Failure to specifically argue how the evidence is factually
insufficient under the proper standard of review, or to otherwise adequately
brief one=s factual sufficiency argument under the rules of appellate procedure,
waives the issue and presents nothing for review.  See McDuff, 939
S.W.2d at 613; Gallegos v. State, 76 S.W.3d 224, 228 (Tex. App.CDallas 2002, pet. ref=d); James v. State, 48 S.W.3d
482, 487 (Tex. App.CHouston [14th Dist.] 2001, no pet.).

Appellant begins his factual sufficiency argument with the
conclusory statement that AThere was factually insufficient evidence of knowing
possession of cocaine by Appellant.@  Appellant then states that he does
not waive his legal sufficiency challenge by also challenging the factual
sufficiency of the evidence.  Appellant then cites to one case for the
proposition that courts may consider a list of specified factors in a factual
sufficiency challenge regarding knowing possession of contraband, and to
another case for the proposition that merely driving a car with contraband in
the trunk does not by itself establish knowing possession.  Appellant concludes
his argument by reiterating that the evidence is factually insufficient to
support the jury=s finding and requesting that we reverse his conviction and
remand the cause for a new trial.

Appellant fails to cite to the record, propose a standard of
review, highlight any evidence from the record, or apply the relevant law to
any specific evidence from the record in the three-quarters of one page of his
brief that he devotes to his factual sufficiency challenge.  We therefore hold
that appellant has insufficiently briefed his factual sufficiency challenge and
presented nothing for our review with respect to this issue.  See Tex.
R. App. P. 38.1(i); McDuff, 939 S.W.2d at 613; Gallegos, 76
S.W.3d at 228; James, 48 S.W.3d at 487.

We overrule appellant=s issue regarding the factual
sufficiency of the evidence supporting the jury=s finding that he knowingly possessed
the crack cocaine Officer Rock found in the trunk of his car.

III.      Denial
of Request for Batson Hearing








Appellant challenges the trial court=s finding that he failed to establish
a prima facie showing of racial discrimination and was therefore not entitled
to a Batson hearing.  The State is prohibited from striking potential
jurors solely on the basis of their race or ethnicity.  Tex. Code Crim. Proc.
Ann. art. 35.261 (Vernon 2006); Batson, 476 U.S. at 89; see also
U.S. Const. amend. XIV, _ 1.  To establish entitlement to a hearing on a Batson challenge,
a defendant must first establish a prima facie showing of racial
discrimination.  See Watkins v. State, 245 S.W.3d 444, 447 (Tex. Crim.
App. 2008).

We will not overturn a trial court=s findings regarding the defendant=s ability to establish a prima facie
showing of racial discrimination unless they are shown to be clearly
erroneous.  Hatchett v. State, 930 S.W.2d 844, 847 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d) (citing Williams v. State,
804 S.W.2d 95, 101 (Tex. Crim. App. 1991)).  We review the voir dire record,
the composition of the jury panel, any evidence offered to establish a showing
of racial discrimination, and any explanations offered by the State.  Contreras
v. State, 56 S.W.3d 274, 279 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d) (citing Williams, 804
S.W.2d at 106, and Whitsey v. State, 796 S.W.2d 707, 713-14 (Tex. Crim.
App. 1989)).  Reversal is mandated only if our review results in a definite and
firm conviction that the trial court erred.  Id.

To establish a prima facie case under Batson, a defendant
must show (1) that the State exercised its strikes to exclude members of a
cognizable minority group from the venire; and (2) that this fact along with
any other relevant facts and circumstances raise an inference that the State
struck the venirepersons because of their race or ethnicity.  See Batson,
476 U.S. at 96.  The defendant need not share the struck venirepersons= race or ethnicity.  Powers v.
Ohio, 499 U.S. 400, 405-06 (1991).  The mere striking of minority
venirepersons, without more, does not establish a prima facie case under Batson. 
See Bean v. State, 816 S.W.2d 115, 119-20 (Tex. App.CHouston [14th Dist.] 1991, no pet.).

The following exchange took place prior to empanelling the
jury:








DEFENSE COUNSEL:         . . . we would
object to the State=s use of peremptory challenges on six persons who are
members of ethnic or racial minorities.  We would point out that under [Texas
Code of Criminal Procedure article] 35.261 that the defendant is a member of a
minority racial group, and that is an African-American.  We would object to the
use of the peremptory challenges by the State against panel members No. 5, 25,
32, 37, 39, and 40, who are all members of either ethnic or racial minority
groups, and were struck by the State of Texas.  We would ask that those strikes
by the State be set aside, and that those six people be allowed to sit on the
jury.

TRIAL COURT:                    I don=t think you have a prima facie case.

DEFENSE COUNSEL:         Okay.  We would
further show under a 1986 Supreme Court case that Texas has a history of racial
discrimination, that Texas was one of the exclusive states that condoned
slavery.  Texas was one of the states that seceded from the Union in order to
fight in the Civil War.  There were battles in the Civil War that were fought
on battle sites in Texas.  Fast-forwarding to the 20th century, there has been
a history of racial prejudice in Harris County, including even in the 21tst
century, allegations of racial discrimination by representatives of the Harris
County District Attorney=s office against the immediate past-elected District
Attorney of Harris County who has resigned from office based in part on
allegations of racism on his part, which was spread throughout his office. 
There have been numerous reports of persons, members of minority racial groups
in the Harris County District Attorney=s
office who have stated they feel uncomfortable.

TRIAL COURT:                    [Defense
counsel], are you accusing [the prosecutor] C
which, I guess, would be a racial C I
just want to know if this prosecutor C

DEFENSE COUNSEL:         Judge, I have
known [the prosecutor] for quite some time.








TRIAL COURT:                    Here=s my deal.  If you are not accusing [the prosecutor],
I don=t need to take up this issue.  All you have to do is
answer that question.

DEFENSE COUNSEL:         Judge, I=m not saying that [the prosecutor] individually is
racist, however C

TRIAL COURT:                    Your
objection is overruled.  If you are not individually accusing [the prosecutor],
we don=t need to have this conversation.

Appellant relies on appeal on this same argument in asserting
that he established a prima facie case under Batson and was therefore
entitled to a Batson hearing.  Appellant does not rely on appeal upon
any of the questions asked or statements made by the State during voir dire.  

While the record indicates that appellant is
African-American, it does not indicate the race or ethnicity of any of the
venirepersons.  Appellant asserts in his argument quoted above that six of the
10 venirepersons struck peremptorily by the State are members of racial or
ethnic minorities, but this unsworn assertion does not constitute evidence.  See
Hatchett, 930 S.W.2d at 847; Dutton v. State, 836 S.W.2d 221, 224
(Tex. App.CHouston [14th Dist.] 1992, no pet.).  The record is equally silent with
respect to the race and ethnicity of the venirepersons empanelled.








Under the circumstances of this case, appellant has not
provided this court with a record sufficient to raise in our minds a definite
and firm conviction that the trial court erred in finding that appellant did
not establish a prima facie showing under Batson.  See Contreras,
56 S.W.3d at 279; see also Hatchett, 930 S.W.2d at 847 (appellant=s argument that State exercised
peremptory challenges to strike four African-American venirepersons, without
more, did not mandate reversal of trial court given record=s silence regarding racial
composition of all venirepersons, including those struck); Dutton, 836
S.W.2d at 224 (record that does not affirmatively indicate race of
venirepersons, including those challenged, Ais insufficient to support appellant=s claim that a prima facie case was
ever established@).  Appellant cannot establish clear error by the trial court
on this record, and we therefore cannot reverse the trial court=s ruling.  See Hatchett, 930
S.W.2d at 847.

We overrule appellant=s issue regarding the trial court=s denial of his request for a Batson
hearing.

IV.      Denial
of Motion to Suppress

Appellant challenges the trial court=s denial of his motion to suppress
his statements and any physical evidence seized by police during the February
1, 2007 traffic stop.  Appellant asserts that the trial court erred because (1)
he did not violate the Texas Transportation Code; (2) his detention during the
traffic stop was unreasonable in length; and (3) the canine who alerted
officers to check his car for contraband was too unreliable to give rise to
probable cause for the search and appellant=s consequent arrest.

The State contends that the trial court did not err because
(1) Officer Rock had reasonable suspicion to believe that appellant had
violated the Transportation Code when he initiated the traffic stop, and once
Officer Rock=s reasonable suspicion for this initial violation evaporated he had
reasonable suspicion regarding another violation; (2) appellant=s detention was not unreasonable in
length under the circumstances; and (3) appellant was precluded from asserting
unreliability of the police canine to support his motion because he did not
include this ground for suppression in his April 4, 2007 written amended
motion.








We generally review a trial court=s denial of a motion to suppress for
abuse of discretion.  Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim.
App. 1999); State v. Vasquez, 230 S.W.3d 744, 747 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
The trial court is the sole judge of the credibility of witnesses at a hearing
on a motion to suppress evidence and may choose to believe or disbelieve any or
all of the witnesses= testimony.[1]  Johnson
v. State, 871 S.W.2d 744, 748 (Tex. Crim. App. 1994) (en banc); Wood v.
State, 18 S.W.3d 642, 646 (Tex. Crim. App. 2000).  The trial court is also
the sole trier of fact at a hearing on a motion to suppress and we are not to
disturb any finding supported by the record.  Flores v. State, 871
S.W.2d 714, 721 (Tex. Crim. App. 1993) (en banc).

As a general rule, we afford almost total deference to a
trial court=s determination of the historical facts the record supports, particularly
when those factual findings are based on an evaluation of the demeanor and
credibility of witnesses.  Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997) (en banc).  We afford this same amount of deference to trial
court rulings on application of law to fact questions if the resolution of
those questions turns on an evaluation of demeanor and credibility of
witnesses.  Id.  

In reviewing a trial court=s ruling on a motion to suppress, we
review the evidence in the light most favorable to the trial court=s ruling.  Gutierrez v. State,
221 S.W.3d 680, 687 (Tex. Crim. App. 2007).  When the trial court does not file
any findings of fact, as here, we assume that the trial court made implicit
findings of fact that support its ruling, so long as the record supports those
findings.  Id.  The trial court=s ruling must be upheld if it is
correct under any theory of law applicable to the case.  Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Vasquez, 230 S.W.3d at 747.

 








A.        Violation
of Transportation Code

Appellant contends on appeal that Officer Rock=s initial traffic stop of February 1,
2007 was invalid.  Appellant further asserts that once Officer Rock saw
appellant=s temporary dealer tag while approaching appellant=s car, Officer Rock should have
immediately determined that appellant was not violating the Transportation Code
despite the absence of a front license plate on his car and terminated the
traffic stop before interacting with appellant.  Appellant does not contend on
appeal that Officer Rock lacked reasonable suspicion to request to search
appellant=s vehicle or to initiate an investigation of the vehicle by a police
canine unit.  

The State contends that Officer Rock had a reasonable
suspicion (1) to initiate the traffic stop based on the lack of a front license
plate on appellant=s car and the testimony that appellant=s temporary dealer tag was not
visible to officers until they approached appellant=s parked car; and (2) that appellant
committed a second violation of the Transportation Code that allowed him to
continue the traffic stop upon seeing appellant=s temporary dealer tag because the
tag was improperly displayed.

A driver violates the Transportation Code if he drives a car
on a public highway during a registration period without displaying license
plates at the front and rear of the car.  Tex. Transp. Code Ann. _ 502.404(a), (e) (Vernon Supp.
2009).  A vehicle that is not yet registered in Texas may be issued a temporary
30-day permit in lieu of registration.  Id. _ 502.354(a), (b) (Vernon 2007).  A
driver violates the Transportation Code if he drives an unregistered car on a
public highway without properly displaying a temporary permit in the rear
window of the car Aso that the tag is clearly visible and legible when viewed
from the rear of the vehicle.@  Id. _ 502.354(f), (h) (Vernon 2007).








A police officer is warranted in initiating a traffic stop if
the officer has reasonable suspicion that the person stopped has committed a
traffic violation.  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App.
2001); Walter v. State, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000). 
Reasonable suspicion exists if the officer has specific articulable facts under
the totality of the circumstances that, when combined with rational inferences
from those facts, would lead the officer to reasonably suspect that a person
has engaged in criminal activity.  Garcia, 43 S.W.3d at 530.  

We use a bifurcated standard of review in determining whether
reasonable suspicion existed under the totality of the circumstances.  Id. 
We give almost total deference to the trial court=s determination of historical facts
and application of the law to fact questions that turn on credibility and
demeanor; we review de novo application of law to fact questions that do
not turn upon credibility and demeanor.  Id.  The State need not
establish with absolute certainty that a crime has occurred in order to
establish reasonable suspicion.  Id.

The State presented ample evidence that Officer Rock
reasonably suspected that appellant violated Transportation Code section
502.404, validating the initial traffic stop: (1) Officer Rock=s testimony that appellant was
driving his car on a public highway in Texas without displaying a license plate
on the front of the car; (2) Officer Rock=s testimony that appellant told him
that the front license plate was in the trunk of the car; (3) testimony from
multiple officers that appellant=s temporary dealer tag could not be
seen until they approached appellant=s parked car because it was lying
flat on the rear dashboard; and (4) Officer Rhule=s testimony that appellant=s car had no front license plate.  See
Tex. Transp. Code Ann. _ 502.404(a), (e); Garcia, 43 S.W.3d at 530; Walter, 28
S.W.3d at 543.  

The testimony from Officers Rock, Marshall, and Rhule that
appellant had a temporary dealer tag lying flat on his rear dashboard that
could not be seen or read until they approached appellant=s stopped car provided evidence that
Officer Rock reasonably suspected that appellant violated Transportation Code
section 502.354, validating the continuance of the traffic stop.  See
Tex. Transp. Code Ann. _ 502.354(f), (h); Garcia, 43 S.W.3d at 530; Walter, 28
S.W.3d at 543.








Viewing the above evidence under the bifurcated standard of
review found in Garcia, we cannot say that the trial court erred in
implicitly finding that Officer Rock had reasonable suspicion to (1) initiate a
traffic stop of appellant for violating Transportation Code section 502.404;
and (2) continue his traffic stop based upon appellant=s violation of section 502.354.[2] 
See Garcia, 43 S.W.3d at 530.  Thus, we cannot say that the trial court
abused its discretion in denying appellant=s motion to suppress based upon
appellant=s contention that he did not violate the Texas Transportation Code.  See
Oles, 993 S.W.2d at 106; Vasquez, 230 S.W.3d at 747.

B.        Unreasonable
Length of Detention

Appellant contends that his detention of 20 minutes while
waiting for a police canine unit to arrive was unreasonable under the United
States and Texas constitutions.  Appellant further contends that the entire
length of the February 1, 2007 traffic stop C approximately 43 minutes C was unreasonable.  The State
contends that both the detention and the total length of the stop were
reasonable under the circumstances of this case.








A[A]n investigative detention must be
temporary and last no longer than is necessary to effectuate the purpose of the
stop.  Similarly, the investigative methods employed should be the least
intrusive means reasonably available to verify or dispel the officer=s suspicion in a short period of
time.@  Florida v. Royer, 460 U.S.
491, 500 (1983); Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App.
1997) (en banc).  Any continued detention beyond the reason for the initial
traffic stop must be based on articulable facts which, taken together with
reasonable inferences from those facts, would warrant a person of reasonable
caution to conclude that the individual stopped was engaged in criminal
activity C i.e., reasonable suspicion.  Davis, 947 S.W.2d at 244-45.

To establish reasonable suspicion, an officer must be able to
articulate something more than an unparticularized suspicion or Ahunch.@  United States v. Sokolow,
490 U.S. 1, 7 (1989).  The determination of reasonable suspicion must be based
on common sense judgments and inferences about human behavior.  Illinois v.
Wardlow, 528 U.S. 119, 125 (2000).  Following the initial traffic stop, an
officer may rely on all facts ascertained during the course of his contact with
the stopped individual to develop articulable facts that justify further
detention.  Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel
Op.] 1979); Sims v. State, 98 S.W.3d 292, 294 (Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).








Officer Rock testified to the following facts ascertained
throughout the course of the February 1, 2007 traffic stop which gave rise to
his reasonable suspicion that appellant possessed a controlled substance: (1)
appellant immediately decelerated upon seeing Officer Rock pull up beside him,
forcing Officer Rock to slow to approximately 30 to 35 miles per hour and
eventually pull over to allow appellant to pass him; (2) appellant took the
very next exit off of the highway after passing Officer Rock; (3) appellant
appeared nervous and spoke rapidly and stuttered while conversing with Officer
Rock; (4) appellant stated several times without prompting that he Ajust got the car@; (5) appellant claimed to have known
his passenger Afor a long time@ but was initially unable to provide his passenger=s last name, which Araise[d] a red flag@ in Officer Rock=s opinion; (6) appellant refused to
consent to a search of his car; (7) appellant seemed evasive in answering
questions; and (8) numerous air fresheners were located within the interior of
appellant=s car.  Officer Rock also testified outside the jury=s presence that he saw an offender
identification card in appellant=s wallet, and that appellant told
Officer Rock he had been incarcerated previously for a drug-related crime. 
Based upon these facts, Officer Rock was justified in further detaining
appellant for a reasonable suspicion that he possessed a controlled substance. 
See Razo, 577 S.W.2d at 711; Sims, 98 S.W.3d at 294.

Once Officer Rock=s justified reasonable suspicion was
established, he was required to employ the least intrusive means reasonably
available to verify or dispel his suspicion in a short period of time.  See
Royer, 460 U.S. at 500; Davis, 947 S.W.2d at 244.  Appellant
cites no case law other than Royer to support his contention that his
detention was unreasonably long under the circumstances in this case; rather,
he attempts to distinguish the cases relied upon by the State at trial.








The State cites numerous federal and state cases on appeal
which appellant does not distinguish.  In each of these cases, the court held
that a detention longer than the 43-minute wait appellant experienced was
reasonable under similar circumstances to those found here.  See United
States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) (en banc) (60-minute
wait for canine unit to arrive following traffic stop not unreasonable where
officer requested canine unit approximately six minutes after stopping
defendant; Alocal government police forces and the state highway patrol cannot be
expected to have drug dogs immediately available to all officers in the field
at all times@); United States v. Frost, 999 F.2d 737, 741-42 (3d Cir. 1993)
(80-minute wait for canine unit to arrive to investigate airline passenger=s luggage not unreasonable where
officers requested canine unit Aas soon as@ passenger refused to consent to search); Strauss v. State,
121 S.W.3d 486, 492 (Tex. App.CAmarillo 2003, pet. ref=d) (75-minute wait for canine unit to
arrive following traffic stop not unreasonable where canine unit was not
immediately available and had to be secured from another law enforcement
agency); Josey v. State, 981 S.W.2d 831, 841-42 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d) (90-minute lapse between time of
initial traffic stop and canine unit=s investigation of vehicle at police
station not unreasonable where officers diligently engaged in other
investigatory procedures C securing scene, checking defendant=s identification, etc. C during time lapse, and where
appellant=s lack of cooperation further attributed to time lapse).

Officer Rock testified that he requested a canine unit to
respond to his traffic stop of appellant only after appellant refused to
consent to a search of the vehicle.  Officer Marshall corroborated this
testimony.  The canine unit had to be secured from another law enforcement
agency C the Pasadena Independent School
District Police Department.  In light of the case law described above, we hold
that the trial court did not err in concluding that appellant=s wait of 20 minutes for Officer
Bagwell=s arrival and total detention of 43
minutes was reasonable under the circumstances of this case.  See Bloomfield,
40 F.3d at 917; Frost, 999 F.2d at 741-42; Strauss, 121 S.W.3d at
492; Josey, 981 S.W.2d at 841-42.

C.        Unreliability
of Police Canine

Appellant contends that officers lacked probable cause to
search his car based upon the results of the police canine=s investigation because the canine
was unreliable.  The State asserts that appellant is precluded from arguing
this issue on appeal because it was not included in his written motion to
suppress; the trial court barred appellant from arguing this issue during the
suppression hearing for the same reason.  Appellant did not object to the trial
court=s admonition that it would not hear
argument on this issue, and does not challenge on appeal the trial court=s refusal to hear this argument.

As a prerequisite to presenting a complaint for appellate
review, the record must show that (1) the complaint was made to the trial court
by a timely objection or motion that stated the grounds for the complaint; and
(2) the trial court ruled or refused to rule on the objection or motion.  Tex. R.
App. P. 33.1(a).  The failure to present a complaint in a written motion to
suppress or during the suppression hearing waives that complaint for appellate
review.  See id.; Jackson v. State, No. 01-07-00859-CR, 2009 WL
1886174, at *3-*4 (Tex. App.CHouston [1st Dist.] July 2, 2009, no pet.).








Because appellant failed to present his complaint regarding
the asserted unreliability of the police canine to the trial court, either
through his written motion to suppress or during the suppression hearing, he
has waived this complaint and presents nothing for review.  See Tex. R.
App. P. 33.1(a); Jackson, 2009 WL 1886174, at *3-*4.

We overrule appellant=s issue regarding the trial court=s denial of his motion to suppress
evidence.

V.        Denial
of Motion for Mistrial

Appellant challenges the trial court=s denial of his motion for mistrial
following the State=s improper comment on his silence during closing argument of
the punishment stage of the trial.  We review the denial of a motion for
mistrial for clear abuse of discretion.  Ocon v. State, 284 S.W.3d 880,
884 (Tex. Crim. App. 2009).  A trial court does not abuse its discretion unless
its decision falls outside the zone of reasonable disagreement.  Id.  We
view the evidence in the light most favorable to the trial court=s ruling.  Id.  

A mistrial should be granted only when residual prejudice
remains after less drastic alternatives C like instructing the jury to
disregard inadmissible evidence or comments C have been explored.  See id. at
884-85.  Only offensive or flagrant comments warrant reversal when an
instruction to disregard has been issued.  See Wesbrook v. State, 29
S.W.3d 103, 116 (Tex. Crim. App. 2000).  Instructions to the jury are generally
considered sufficient to cure improprieties that occur during trial, and we
generally presume that a jury will follow the trial court=s instructions.  Gamboa v. State,
___ S.W.3d ___, ___ (Tex. Crim. App. 2009).








We may consider the following factors in determining whether
improper jury argument warrants a mistrial: (1) the severity of the misconduct
(the magnitude of the prejudicial effect of the State=s comment); (2) the measures adopted
to cure the misconduct (the efficacy of the trial court=s curative instructions); and (3) the
certainty of the punishment assessed absent the misconduct (the strength of the
evidence supporting the sentence).  See Archie v. State, 221 S.W.3d 695,
700 (Tex. Crim. App. 2007).

During closing argument in the punishment phase of appellant=s trial, the State commented that
appellant Anever took responsibility like a man for his actions.@  Appellant immediately objected to
the comment as an improper reference to appellant=s silence in violation of Texas Code
of Criminal Procedure article 38.08.  See Tex. Code Crim. Proc. Ann.
art. 38.08 (Vernon 2005).  Appellant=s objection was sustained and the
jury was instructed to disregard the offending comment.  Appellant moved for a
mistrial, which the trial court denied.

The State concedes on appeal that the comment at issue
violated article 38.08, but contends that the trial court=s instruction to disregard was
sufficient to cure the violation.  The comment in question marked the State=s only reference to appellant=s silence in six pages of closing
argument during the sentencing phase of appellant=s trial.  The State did not attempt
to repeat or otherwise revive the issue of appellant=s silence, nor did the State argue
any inferences that could be made based on appellant=s silence.  Appellant immediately
objected to the State=s improper comment; appellant=s objection was immediately sustained
and an instruction to disregard given.  The jury charge instructed the jury
that it could not Arefer or allude to@ appellant=s silence during deliberations or
otherwise consider it as a circumstance against him.  

The State presented authenticated business records from the
Texas Department of Criminal Justice and the Harris County Sheriff=s Department during the punishment
phase of trial establishing that appellant had two prior felony drug
convictions and six misdemeanor convictions.  Appellant presented no evidence
during the punishment phase of his trial.








Appellant faced punishment of confinement ranging from five
to 99 years if the enhancement paragraph were found to be not true; he faced a
minimum of confinement for 15 years if the paragraph were found to be true. 
The State asked the jury to find the enhancement paragraph to be true and
sentence appellant to confinement for 30 years.  Appellant asked the jury to
find the paragraph to be not true and give him the minimum sentence of five
years.  The jury found the paragraph to be true and sentenced appellant to
confinement for 25 years C less than requested by the State and far less than the
maximum sentence allowed.

Viewing the evidence in this case in the light most favorable
to the trial court=s ruling, we cannot say that the trial court abused its
discretion in denying appellant=s motion for mistrial.  See Ocon, 284 S.W.3d at
884-85; see also Archie, 221 S.W.3d at 700 (no abuse of discretion in
denying motion when comment on appellant=s failure to testify was brief and
immediately followed by sustained objection and instruction to disregard, and
jury charge included instruction that jurors were not to Arefer to, allude to, or take into
consideration the fact that appellant had not elected to testify@).

We overrule appellant=s issue regarding the trial court=s denial of his motion for mistrial.

Conclusion

The trial court=s judgment is affirmed.     

 

 

/s/      William
J. Boyce

Justice

 

Panel consists of Justice Anderson, and Justices Guzman and Boyce.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]           Both
parties on appeal cite testimony and evidence from the State=s case-in-chief and the hearing on appellant=s motion to suppress.  In addition, the record
reflects that the trial court expressly relied on testimony given during the
State=s case-in-chief in addition to Officer Rock=s testimony during the hearing in denying appellant=s motion; appellant did not object to this practice
and does not challenge it on appeal.  While generally we consider only the
evidence presented during the suppression hearing when reviewing the denial of
a motion to suppress, this general rule does not apply where, as in this case,
the suppression issue was consensually litigated during trial.  See Rachal
v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) (en banc); see also
Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007).  Because
appellant did not object when the State presented evidence and questioned
witnesses regarding the matters appellant sought to suppress C and in fact fully participated in the litigation of
these matters by cross-examining the State=s
witnesses about them C we consider testimony elicited during the State=s case-in-chief and during the suppression hearing
regarding the matters found in appellant=s
motion.  See Rachal, 917 S.W.2d at 809. 





[2]           We
need not decide whether Officer Rock=s
reasonable suspicion that appellant violated section 502.404 instantly
evaporated upon seeing appellant=s
temporary dealer tag because this same event immediately gave rise to
reasonable suspicion that appellant violated section 502.354 by failing to
properly display his temporary dealer tag.  See Walter, 28 S.W.3d at
543.